### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ALISA B.[1]                                                        Case No. 2:24-cv-3194

        Plaintiff,                                          Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


### MEMORANDUM OPINION AND ORDER

Plaintiff Alisa B. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). For the reasons explained below, the ALJ's finding of non-disability should be AFFIRMED.

### I.  Summary of Administrative Record

On April 15, 2021, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), as well as an application for supplemental security income ("SSI"), alleging that she became disabled beginning July 1, 2017 based on a combination of mental and physical impairments. During the alleged disability period, she engaged in substantial gainful activity at times, including a period of time in 2022 when she worked fulltime as a dishwasher at a local restaurant. (R. 25-26.) In April 2023 at the time of the ALJ's decision, Plaintiff continued to be employed in the same position, but only part-time. (*Id.*)

---

[1]Due to significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

After her applications for benefits were denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a telephonic hearing held on March 16, 2023, Plaintiff appeared with counsel and gave testimony before ALJ Jennifer Lash; a vocational expert also testified. (R. 45-68.) On April 18, 2023, the ALJ issued an adverse written decision. (R. 23-40.) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff has a high school education and no past relevant work involving transferable skills. She was 23 years old on the date of her alleged onset of disability, which is considered a "younger individual," and remained in the same age category through the date of the ALJ's decision. She lives with her fiancé and three minor children. Based on her work history, she met insured status requirements for DIB only through September 30, 2019.[2] (R. 25.)

The ALJ determined that Plaintiff has the following severe impairments: "disorders of the spine, right ankle disorder, asthma, disorders of the female genital organs, anemia and thrombosis with factor V disorder, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and trauma- and stressor-related disorder." (R. 26.) The ALJ also found the following non-severe physical impairments: hypersomnia, appendicitis, right hand and finger lacerations, lung nodules, right shoulder tendonitis,

---

[2]The DIB and SSI regulations are virtually identical. That said, because Plaintiff's date last insured for DIB expired on September 30, 2019, Plaintiff was required to prove that she became disabled before that date in order to be entitled to DIB. After her insured status expired, she remained eligible for SSI benefits upon proof of disability. But SSI regulations preclude the receipt of SSI benefits for any month prior to that in which Plaintiff filed the application. *See* 20 C.F.R. § 416.335. Accordingly, the period relevant to the determination of Plaintiff's SSI claim falls between April 15, 2021 and April 18, 2023, the date of the ALJ's decision. *See* 20 C.F.R. § 416.305 (identifying the filing of an SSI application as a requirement in becoming eligible to receive such benefits).

head injury, and pulmonary embolism. (R. 27.) Last, the ALJ evaluated Plaintiff's alleged oppositional defiant disorder, but found no evidence that it was a medically determinable impairment. (*Id*.) Considering all of Plaintiff's impairments, the ALJ concluded that none of them met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, either alone or in combination, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

The ALJ further determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, subject to additional non-exertional limitations:

> [S]he can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs; can never crawl or climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and fumes, odors, dust, gases, and poor ventilation; must avoid all exposure to hazards including moving machinery and unprotected heights; can understand, remember, and carry out routine tasks requiring no more than normal breaks; can occasionally interact with the public, coworkers, and supervisors; can have no frequent changes in the work setting; and can have no fast-paced production demands.

(R. 31.)

Based on the RFC as determined and in reliance on vocational expert testimony, the ALJ found that Plaintiff could still perform a substantial number of unskilled jobs existing in the national economy, including the representative positions of office helper, router, and mail clerk. (R. 39.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any point in time through the date of her decision. (R. 40.)

**II. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted); s*ee also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe"; at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of

4

Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 642-643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### III. Analysis

In this judicial appeal, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence based on alleged errors in the ALJ's evaluation of the opinion evidence. Plaintiff generally argues that the ALJ's analysis is flawed due to internal inconsistencies, and that it did not support the mental RFC limitations as determined. Plaintiff criticizes the ALJ's analysis of two mental health opinions as well as the analysis of a consulting physician's opinion. The Court finds no error.

### A. The ALJ's Assessment of Mental Health Opinion Evidence

Plaintiff attacks the ALJ's articulated assessment of mental health opinions provided by reviewing psychologist Dr. Swain and consulting examiner Dr. Tanley.[3]

---

[3]Plaintiff does not specifically discuss a third psychologist, Dr. Warren, who reviewed Dr. Swain's opinion and Dr. Tanley's consultative psychological report on reconsideration. Dr. Warren essentially adopted Dr. Swain's opinions, (see R. 100), using the same narrative to describe Plaintiff's mental RFC limitations. (R. 104, 105.)

5

Neither opined that Plaintiff had any severe or extreme mental limitations, or that she was in any way disabled from her mental impairments. To the contrary, all psychologists who offered opinions found only "mild" limitations in two functional domains (understanding, remembering and applying information and interacting with others), with only moderate limitations in the other two domains (concentration, persistence, and pace, and adapting or managing oneself).

### 1. Dr. Swain

Psychologist Jennifer Swain completed a Psychiatric Review Technique assessment at the initial consideration level on December 14, 2021. As stated, she found only mild impairment in two functional domains, but moderate limitations in the domains of concentrate, persist, or maintain pace, and in Plaintiff's ability to adapt or manage oneself. (R. 74.) Based on the two moderate limitations, Dr. Swain opined that Plaintiff should be "[l]imited to a simple learned work routine which does not have fast-paced production demands" and in "a structured and predictable work setting with infrequent changes in responsibilities and expectations" (R. 78.)

The ALJ articulated her evaluation of the consistency and supportability factors of Dr. Swain's opinion before evaluating the "persuasiveness" of that opinion as follows:

> This opinion was not well supported by Dr. Swain, as she did not provide much explanation for her opinion. This opinion is somewhat consistent with the other evidence of record, but other evidence shows the claimant is more limited in regard to understanding, remembering, or applying information and interacting with others. Based on the evidence discussed above, I find that the claimant has moderate limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself with the mental residual functional capacity defined above. Therefore, Dr. Swain's opinion is found to be somewhat persuasive.

(R. 37.) Plaintiff first argues that the ALJ's opinion is "internally inconsistent" because it finds Dr. Swain's opinion to be "not well supported," but then adopts aspects of her opinions.

Contrary to Plaintiff's argument, the ALJ's analysis closely adheres to controlling regulations that require an ALJ to consider multiple factors when evaluating the "persuasiveness" of each administrative finding or medical source opinion, while articulating how the ALJ considered the "supportability" and "consistency" factors. *See* 20 C.F.R. § 404.51520c. "[T]he regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," and allow for "the appropriate level of articulation …[to] depend on the unique circumstances of each claim." *See Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00052, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)).

The discussion of supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations such as clinical observations. 20 C.F.R. § 416.920c(c)(1). So when the ALJ stated that Dr. Swain's opinion was "not well supported," based on her lack of "much explanation for her opinion," the ALJ appropriately articulated her evaluation of this factor. In contrast to supportability, consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). As with the supportability factor, the ALJ concisely but appropriately explained why Dr. Swain's opinions remained somewhat persuasive in light of the fact that they were "somewhat consistent" with the evidence of record as a whole.

7

Next, Plaintiff criticizes the ALJ for failing to explain "why [Plaintiff] would have greater limitations" in two functional areas than the only mild limitations endorsed by Dr. Swain. (Doc. 10, PageID 1770.)  Notably, Plaintiff offers no argument at all to explain how the ALJ's failure to adopt the less restrictive mental limitations offered by Dr. Swain would have altered the non-disability determination in her favor.

> Generally… we review decisions of administrative agencies for harmless error. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir.2001); *NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (noting that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality").

*Rabbers v. Comm'r v. Soc. Sec. Admin*., 582 F.3d 647, 654 (6th Cir. 2009).

In any event, it is true that the ALJ found "moderate" limitations in all four functional domains even though all three psychologists, including Dr. Swain, found only mild limitations in two domains. (R. 37.) And it is also true that most evidence summarized by the ALJ does not support more than mild limitations in the domains of understanding, remembering or applying information or in social interactions. But Plaintiff's criticism that the ALJ offered no explanation at all for finding greater limitations than endorsed by Dr. Swain is not accurate. The ALJ explicitly discussed *some* evidence to support her finding of moderate limitations in those two domains, including Plaintiff's report that she had been enrolled in special education in high school and Dr. Tanley's assessment that she functioned in the low average range of verbal intelligence. (R. 29, 35--36.) With respect to finding that Plaintiff has moderate rather than mild limitation in interacting with others, the ALJ also cited to clinical examination records that included one record of a "hostile mood." (R. 29-30.)  This Court must affirm so long as substantial evidence exists to uphold the ALJ's finding of "moderate" rather than merely "mild" limitations in the referenced functional domains, as exists in this case.

8

## 2. Dr. Tanley

On June 7, 2022, Plaintiff attended a telehealth consultative psychological examination performed by James C. Tanley, Ph.D. (R. 1663-1568.) Dr. Tanley noted that Plaintiff self-reported a diagnosis of PTSD based on childhood trauma, but has never been psychiatrically hospitalized. (R. 1565.) Plaintiff also told Dr. Tanley that she has never filed for mental disability leave nor has she ever been referred by an employer for mental health treatment. (*Id*.) She takes no psychiatric medication for her PTSD, (R. 1567), but has treated with a therapist for the past two years. (R. 1565.) During the clinical interview, she stated that she gets along "very well with people." (*Id*.)

Like Dr. Swain, Dr. Tanley assessed Plaintiff's abilities in the four functional domains. On the date of assessment, he found Plaintiff to be "unimpaired" in her abilities in maintaining attention and concentration, and in maintaining persistence and pace to perform both simple and multistep tasks. (R. 1568.) He opined that "she would be expected to show little or no difficulty with tasks of increasing complexity and multistep tasks." (*Id*.) In other words, his opinion was consistent with Dr. Swain's opinion of no more than mild limitation in the domain of understanding, remembering and applying information. But Dr. Tanley also noted the *possibility* of some undefined amount of worsening in the future: "*Were her PTSD symptoms to worsen*, they *could* negatively impact this domain by interfering with her ability to focus and to concentrate." (*Id*., emphasis added.)

Dr. Tanley similarly noted that Plaintiff's social presentation was "unremarkable" with no apparent limitations in the domain of interacting with others at the time of his clinical interview – again consistent with Dr. Swain. He noted that Plaintiff reported she does "very well with people," and did not report any problems with people in her work

9

history. (*Id*.) Despite his clear opinions regarding Plaintiff's present lack of functional impairment, Dr. Tanley again added a cautionary sentence that "her PTSD symptoms *could* make the free and easy commerce of social interaction on the job a bit problematic". (*Id*., emphasis added) Last, in assessing her past and present ability to respond appropriately to work pressures, Dr. Tanley noted the lack of any reported current or past limitations – arguably a rosier outlook than endorsed by Dr. Swain who found moderate limitations in that domain. Nevertheless, Dr. Tanley repeated the same cautionary warning that Plaintiff's self-reported PTSD symptoms "*could* lower her frustration tolerance a bit and put her somewhat at risk for the pressures of work" in the future. (*Id*.)

In this appeal, Plaintiff criticizes the ALJ for failing to discuss or incorporate into RFC limitations Dr. Tanley's hypothesis that Plaintiff's PTSD symptoms "could potentially worsen and cause difficulties with concentration and social interaction in the future." (Doc. 10, PageID 1765-1766.) Plaintiff complains that the mental RFC as assessed "did not fully account for the *possibility* of worsening PTSD symptoms affecting [Plaintiff's] ability to maintain focus and complete tasks," (Doc. 10, PageID 1770), or "how periodic worsening *could* affect her work capacity," or her "potential for heightened difficulty in social situations due to PTSD." (*Id*., PageID 1771.)

The Court finds no error. A claimant's RFC is the most that a claimant can do despite his or her impairments. 20 C.F.R. § 404.1545(a)(1). In the case presented, it is clear that Dr. Tanley's statements regarding what theoretically could happen if Plaintiff's PTSD symptoms were to increase in the future are not statements of opinion regarding the most that Plaintiff can do given her current level of impairment. Dr. Tanley's clinical interview and Plaintiff's own reports of her functional abilities revealed virtually no limitations at all in maintaining attention and concentration, in maintaining persistence and

pace, or in her ability to interact with others. True, his report includes statements that reflect *possible* limitations that *might* occur, hypothetically, if Plaintiff's PTSD symptoms happened to worsen in the future. But Plaintiff points to no evidence that she has ever experienced such a severe worsening of PTSD symptoms within the relevant disability period. Certainly she reported no disabling symptoms to Dr. Tanley.[4]

An ALJ is not required to specifically discuss hypothetical or speculative comments of possible limitations that are based on the mere possibility that a medical condition might worsen on an unknown future date. *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (no error in omitting equivocal restrictions; doctor had described only possible restrictions using "may" and "seems"); *see also Benson v. Comm'r of Soc. Sec.*, No. 3:19-cv-2804, 2021 WL 804150, at *3 (N.D. Ohio Mar. 2, 2021) ("Other judges have found no error in the failure to include limitations phrased in non-definitive language.") (citing *Golden v. Berryhill*, No. 3:18-cv-227, 2019 WL 2109322, at *7 (N.D. Ohio Feb. 28, 2019), rep. & rec. *adopted sub nom. Golden v. Comm'r of Soc. Sec.*, 2019 WL 2106566 (N.D. Ohio May 14, 2019) (finding substantial evidence supports the ALJ's determination not to include certain limitations "as Dr. Hill indicated these limitations not as requirements, but rather as possibilities, as she wrote that Plaintiff 'may need' these additional [limitations].")).

---

[4]Given the lack of such information reported to Dr. Tanley, it is not surprising that he did not opine on the likelihood that Plaintiff's PTSD symptoms would significantly worsen over time. Moreover, even if her PTSD did worsen, Dr. Tanley did not opine on how much greater limitation Plaintiff might experience as a result. Recall that Dr. Tanley found no past or present work-related limitations in multiple areas based on his clinical exam, whereas the ALJ found moderate levels of limitation in four functional domains. So to find reversible error, this Court would have to conclude that Dr. Tanley offered specific opinions that Plaintiff's PTSD would worsen (and that no substantial evidence exists to the contrary), and that the predicted worsening of PTSD symptoms would cause a disabling level of limitations far in excess of the "moderate" limitations  assessed by the ALJ. Neither Dr. Tanley's report nor the record as a whole support such a conclusion.

After providing an accurate summary of Dr. Tanley's actual opinions (as opposed to evaluating his speculative remarks about future possibilities), the ALJ found those opinions to be "well supported" by his clinical examination and "generally consistent with the other evidence of record discussed above." (R. 38.) Even so, the ALJ did not adopt the "generally persuasive" opinions completely. Instead, she referred back to the portion of her opinion where she explained why she believed that – notwithstanding Dr. Tanley's assessment that Plaintiff was essentially "unimpaired" in understanding and remembering, in concentration, persistence, and pace, and in interacting with others - the ALJ found "moderate" limitations in those domains. (R. 38.) Ultimately, the ALJ translated Dr. Tanley's very general opinions, and Dr. Swain's more specific RFC opinions into Plaintiff's mental RFC. Consistent with all psychological opinions, the RFC as determined limits Plaintiff to the performance of unskilled "routine" tasks with "no frequent changes in the work setting" and "no fast-paced production demands." In addition, although Dr. Swain offered no social limitations and Dr. Tanley suggested no more than a hypothetical possibility of such limitation, the ALJ limited Plaintiff to only occasional interaction "with the public, coworkers, and supervisors." The ALJ's articulation and analysis of the mental health opinions and translation of those opinions into a mental RFC is substantially supported.

## B.  The ALJ's Assessment of Dr. Chang's Opinion

Plaintiff levels similar criticisms at the ALJ's analysis of the opinion of a consulting physician. Douglas Chang, MD, reviewed Plaintiff's medical records on November 2, 2021 on initial consideration. (R. 76.) The ALJ accurately summarized Dr. Chang's opinions before articulating the "supportability" and "consistency" factors.

[Dr. Chang] found … that the claimant could perform light work with no climbing of ladders, ropes, or scaffolds or crawling, occasional climbing of

12

ramps and stairs and stooping, frequent balancing, kneeling, and crouching, avoidance of concentrated exposure to extreme cold and heat, wetness, humidity, and vibration, and avoidance of even moderate exposure to hazards (machinery, heights, etc.) and fumes, odors, dusts, gases, poor ventilation, etc…. This opinion is not well supported by Dr. Chang's explanation for his opinion, as he only stated that more recent medical evidence of record did not change the residual functional capacity that was completed on September 3, 2021 …. This opinion is generally consistent with the other evidence of record except environmental limitations are not supported or consistent and other evidence shows the claimant is more limited in regard to postural limitations and hazards. May 3, 2021, x-ray views of the lumbar spine showed mild, chronic anterior wedging of the L1 vertebral body and no dynamic instability (Exhibit 1F, at 45), supporting a finding that the claimant requires additional postural limitations. Nurse practitioner Ms. Owens reported on February 2, 2022, that the claimant had asthma (Exhibit 9F, at 43), but limitations from asthma were not mentioned in the medical treatment evidence. Therefore, I find that the claimant must avoid concentrated exposure as opposed to even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. Therefore, Dr. Chang's opinion is found to be generally persuasive.

(R. 36-37.)

As with the ALJ's evaluation of the psychological opinion evidence, Plaintiff argues that the ALJ "contradicts herself by stating that Dr. Chang's opinion was not well-supported by his explanation" but nevertheless goes on to credit his opinion as generally persuasive. (Doc. 10, PageID 1768.) The Court finds no inconsistency or contradiction. Once again, the ALJ's analysis merely reflects the mandatory articulation that is required under the regulations. The "supportability" factor has a specific regulatory meaning in this context. The statement that Dr. Chang's opinion was not particularly well-supported reflects the reality that Dr. Change did not expound upon the basis for his opinions. The ALJ also appropriately explained why she still found Dr. Chang's opinions to be "generally persuasive" in part based on the "consistency" factor since the opinions were "generally consistent with the other evidence of record" except for her postural and environmental limitations.

13

Turning her attention to the environmental limitations, Plaintiff asserts error in the ALJ's failure to adopt identical limitations to those endorsed by Dr. Chang. For example, Dr. Chang opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, and vibration, and avoidance of even moderate exposure to hazards (machinery, heights, etc.) and fumes, odors, dusts, gases, poor ventilation, etc. (R. at 77, 90). By contrast, the ALJ restricted her only from concentrated (as opposed to moderate) exposure to fumes, odors, dust, gases, and poor ventilation, despite adopting other environmental limitations without change. (*Compare* R. 31 and 37 with R. 90.) Plaintiff argues that she requires Dr. Chang's more restrictive limitation regarding exposure to even moderate fumes, odors, gases, etc. in order to avoid exacerbation of her asthma.

The Court concludes that the ALJ adequately explained her reasons for choosing an RFC that limits Plaintiff only from "concentrated" exposure. At the hearing, Plaintiff testified that she uses an albuterol inhaler "as needed." The ALJ discussed that testimony as well as a single reference in a February 2022 medical record that recorded Plaintiff's asthma diagnosis. The ALJ then pointed out that, apart from Dr. Chang's consulting opinion based on his review of records, there are no medical records by any treatment provider that refer to any limitations at all from asthma. (R. 37.) In other words, not only did Dr. Chang fail to explain why he believed that Plaintiff should be limited to "moderate" irritant exposure, but that particular opinion was inconsistent with the record, which supports a limitation to avoid "concentrated" exposure. The ALJ's explanation substantially supports her RFC finding. In addition, Plaintiff does not argue that any of the representative positions that the ALJ determined she could perform would in any way be

reduced by the more restrictive limitation to "moderate" fumes and odors that Dr. Chang endorsed.

Notably, the only other changes made by the ALJ to Dr. Chang's opinions resulted in an increase in Plaintiff's physical restrictions. For example, the ALJ found that she must avoid *all* exposure (as opposed to avoiding moderate exposure as endorsed by Dr. Chang) to hazards including moving machinery and unprotected heights. (*Compare* R. 31 and 37 with R. 90.)  And in contrast to Dr. Chang's opinion that Plaintiff could "frequently" balance, kneel and crouch, the ALJ determined that she could perform those postural activities only occasionally. (*Compare* R. 31 with R. 76, 89.) Apart from the serious question as to how the ALJ's determination of more restrictive physical RFC findings than those endorsed by Dr. Chang could have been prejudicial or altered the outcome of this case, the Court finds no error. As with the alteration of the asthma-related limitations, the ALJ referred to specific medical evidence that substantially supported her increase to Plaintiff's limitations.

### III. Conclusion and Order

Because the Defendant's decision is well supported by substantial evidence in the record as a whole, **IT IS ORDERED THAT** the Defendant's decision be **AFFIRMED** and that the above-captioned case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge